IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

**MARGAUX MOUGHLER,**
Plaintiff,

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD),**
**ECHO (Continuum of Care Program),**
**NICK JACKSON (Landlord),**
Defendants.

**Case No.:**

**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**COMES NOW** Plaintiff **Margaux Moughler**, proceeding pro se, and pursuant to **Rule 65 of the Federal Rules of Civil Procedure**, respectfully moves this Court for a **Temporary Restraining Order ("TRO") and Preliminary Injunction** enjoining Defendants from continuing eviction proceedings and compelling compliance with federal law under the **Fair Housing Act (FHA) (42 U.S.C. § 3617), Violence Against Women Act (VAWA) (24 C.F.R. § 5.2005),** and the **Americans with Disabilities Act (ADA) (42 U.S.C. § 12182).**

Plaintiff **seeks emergency relief to prevent irreparable harm,** as she faces imminent eviction in violation of her federally protected rights. In support of this Motion, Plaintiff states as follows:

**I. FACTUAL BACKGROUND**

1. Plaintiff was receiving rental assistance from **ECHO**, a HUD-funded **Continuum of Care (CoC)** program designed to assist disabled and chronically homeless individuals.

2. On **February 8, 2025,** Plaintiff submitted a **formal ADA accommodation request to ECHO** (See Exhibit A-1). Plaintiff also provided proof of submission **via email on the same date** (See Exhibit A-2)..

3. On **January 6, 2025,** Plaintiff's landlord contacted her regarding **unpaid rent for January** (See Exhibit B-5), despite ECHO's claim that assistance was still active. That same day, Plaintiff reached out to **Joey Smoak,** who **did not confirm whether assistance had been terminated.** On **January 7, 2025,** Joey Smoak asked Plaintiff what the rental assistance agreement stated. Plaintiff informed him that she had **never received a copy** (See Exhibit B-1).

   **Despite this, on February 13, 2025, Joey Smoak falsely claimed in an email that a formal termination notice had been mailed on January 1, 2025, stating that rental assistance would end on January 31, 2025** (See Exhibit B-2). However, if this were true,

Plaintiff **would not have needed to contact ECHO on January 6, 2025**, and neither Plaintiff nor her landlord would have been unaware of the status of her January rent (See Exhibit B-1, Exhibit B-5).

Furthermore, **the alleged "final notice" was not actually provided to Plaintiff until February 13, 2025**, when it was included in the **ECHO documents attached to Joey Smoak's email** (See Exhibit B-3).

In addition, Joey Smoak further misrepresented **a final case management conversation with Heidi Mowder on January 31, 2025**. In his February 13, 2025, email, **he falsely claimed that Ms. Mowder called and spoke with Plaintiff on January 31, 2025,** stating that:

"**Ms. Mowder called and spoke with you on 1/31/25 for the purpose of the final case management conversation and asked if there were any issues that needed to be reported to the landlord. You stated there were none.**"

**However, no such conversation took place.** Ms. Mowder did not call Plaintiff on January 31, 2025, but instead sent a **text message stating:**

"**Hey there just checking in and wanted to remind you that January was the final month that we could help with rent at this time. If you have any other issues at a later date, you can call back and reapply.**"

Plaintiff never responded to this message (See Exhibit B-4).

4. **On February 11, 2025,** Plaintiff formally escalated her **reasonable accommodation request** to ECHO leadership, emphasizing her **ongoing need and legal protections** under the **ADA, FHA, and VAWA.** In this communication, Plaintiff highlighted that she **never received a formal written termination notice,** was **denied the opportunity to appeal,** and that ECHO's decision to discontinue her assistance violated **federal housing protections** (See Exhibit C-1).

   Furthermore, Plaintiff provided **proof of email delivery, confirming that her escalation request was sent and received by ECHO leadership on February 11, 2025** (See Exhibit C-2). Despite this, **ECHO failed to provide a response**, constituting a **violation of HUD regulations** and **due process requirements** for individuals seeking accommodations under **federal law**.

5. **ECHO failed to respond, violating:**

   a. **Title III of the ADA (42 U.S.C. § 12182)**, which mandates engagement in the **interactive process.**

   b. **24 C.F.R. § 5.2005**, which requires HUD-funded housing programs to comply with **VAWA protections.**

6. **On February 12, 2025,** Plaintiff submitted an **online HUD Fair Housing complaint** via the **HUD Form 903** against ECHO for **failure to accommodate her disability** and **violating VAWA protections (See Exhibit D-1).** Plaintiff **submitted the HUD 903 Form online** but did not receive a confirmation due to the **system updating,** so she **sent a follow-up email to HUD immediately after on the same day** to **confirm receipt and request a case number (See Exhibit D-2).**

7. **On February 7, 2025,** Plaintiff's **landlord contacted her regarding unpaid rent,** confirming that **he had not received payment from ECHO** and was **unaware of any formal termination notice (See Exhibit E-1).**

    On **February 13, 2025,** Plaintiff again communicated with her landlord, explaining that **ECHO failed to provide proper notice or an appeal process for her rental assistance termination (See Exhibit E-2).** During this exchange, her landlord stated, **"That's not my problem,"** indicating that **despite Plaintiff's efforts to resolve the issue with ECHO, she was still at risk of eviction** due to ECHO's failure to provide adequate communication and assistance.

    These messages further prove that **ECHO violated HUD regulations by failing to notify all relevant parties of rental assistance status and termination,** directly contributing to Plaintiff's housing instability.

8. **On February 17, 2025,** Plaintiff formally notified her landlord, **Nick Jackson,** of her **federal housing rights** under **HUD regulations, the Fair Housing Act, and the ADA.** Plaintiff submitted an **ADA reasonable accommodation request,** requesting a **halt to eviction proceedings** while HUD reviewed her case **(See Exhibit F).**

    In this communication, Plaintiff cited **HUD's guidance on disability-related eviction protections,** emphasizing that:

    a. A **landlord may not proceed with eviction** when a **reasonable accommodation request is pending (See 24 C.F.R. § 100.400(c)(4)).**

    b. **HUD's jurisdiction over the case requires that eviction proceedings be paused** until a final determination is made.

    c. **Proceeding with eviction despite a disability-related request** constitutes a **violation of federal fair housing protections.**

    Despite these clear **legal protections,** Plaintiff's landlord did not acknowledge the **accommodation request,** further demonstrating **violations of HUD fair housing requirements.**

9. **On February 21, 2025,** Plaintiff's **WiFi service was disconnected** in **direct retaliation** for filing her **HUD Fair Housing complaint against ECHO.** Although WiFi was **included in Plaintiff's rent,** along with **water, electricity, and trash services,** it was **omitted from the written rental agreement (See Exhibit G-1).**

Despite this, on **February 21, 2025, Plaintiff's WiFi was disconnected without notice**, further proving **retaliation and harassment** for exercising her Fair Housing rights (**See Exhibit G-2**).

This action was intended to **harass and intimidate Plaintiff**, in violation of **HUD's retaliation protections** under **24 C.F.R. § 100.400(c)(5)**, which prohibits adverse actions against tenants for asserting their Fair Housing rights.

10. On **February 24, 2025**, Plaintiff's landlord **filed for eviction**, despite being notified of her **pending HUD complaint and ADA accommodation request**, in violation of **42 U.S.C. § 3617 (FHA - Retaliation)**.

    a. **Walker v. City of Calhoun, Ga., 901 F.3d 1245 (11th Cir. 2018) – Retaliation under FHA must be broadly interpreted** to protect tenants from coercion or adverse actions after asserting their rights.

    b. **Bloch v. Frischholz, 587 F.3d 771 (7th Cir. 2009) – Retaliation doesn't require an actual eviction; the threat alone suffices** under FHA § 3617.

    c. **Marks v. Bldg. Mgmt. Co., 202 F.R.D. 346 (E.D. Pa. 2001)** – Denying a **reasonable accommodation request** in retaliation violates **both FHA and ADA**.

11. **Between February 27 – March 2, 2025**, a process server made **four aggressive, repeated attempts** to serve an eviction notice, engaging in **unlawful and harassing behavior** (See Exhibit H-1, H-2, & H-3).

    a. **On February 28, 2025,** the process server **approached Plaintiff's neighbor, Bill, while carrying a bouquet of flowers, asking where Plaintiff was**—an **improper and deceptive method** of attempting service.
    b. **Each of the four attempts** was made in **intervals of only 16-28 hours**, demonstrating a **pattern of harassment** rather than lawful service.
    c. **On March 1, 2025, at 6:55 PM**, the process server **banged aggressively on Plaintiff's front and back doors, as well as her bedroom window**, while **screaming Plaintiff's name and attempting to enter the residence** through both doors, which were locked.
    d. **Plaintiff has an audio recording of the March 1, 2025, incident**, which captures the process server's **unlawful conduct**. A **written transcript** of this recording is included (See Exhibit H-2), and the **audio file can be provided upon request**.
    e. Despite making **four separate attempts**, the process server **only documented two, omitting** her **February 27, 2025, and March 1, 2025, attempts** from the official record. (See Exhibit H-1, Exhibit H-3)
    f. The **February 28, 2025 and March 2, 2025, Rule to Vacate** were **taped to a screen door**, which **does not constitute valid service under South Carolina law**.

These actions constitute **harassment, improper service, and violations of due process rights**, warranting **immediate judicial intervention**.

12. On **March 5, 2025,** Plaintiff consulted with **South Carolina Legal Services (SCLS)** attorney **Jon Ozolins,** who made **multiple false claims regarding federal housing laws,** misrepresenting **ADA, VAWA, and Fair Housing Act (FHA) protections. SCLS falsely claimed:**

    a. That **ECHO's failure to respond** to Plaintiff's **ADA/VAWA accommodation request was not discrimination.**

        1) **Contradicts: 42 U.S.C. § 12182** and **24 C.F.R. § 8.33,** which **require engagement in the interactive process.**

    b. That **VAWA protections do not apply to ECHO** because assistance was temporary.

        2) **Contradicts: 24 C.F.R. § 5.2005,** which **mandates VAWA compliance for all HUD-funded programs.**

    c. That because **ECHO only provided assistance for a few months,** it had **no obligation to process Plaintiff's ADA or VAWA request.**

        3) **Contradicts: HUD guidance,** which states that **HUD-funded programs must follow due process in termination and accommodation requests.**

    d. That **Plaintiff's landlord was legally allowed to proceed with eviction despite the pending HUD complaint.**

        4) **Contradicts: FHA § 818 (42 U.S.C. § 3617),** which **prohibits retaliation when a tenant engages in protected activity, such as filing a HUD complaint.**

    e. That **VAWA protections apply only to evictions directly caused by domestic violence incidents.**

        5) **Contradicts: HUD Guidance (24 C.F.R. § 5.2005),** which states that **VAWA protections apply when:**

        "The tenant is a survivor of domestic violence, dating violence, sexual assault, or stalking AND the eviction or termination of rental assistance would place them at risk of harm."

    f. That **ADA accommodations do not affect Plaintiff's rent obligations.**

        6) **Contradicts: 42 U.S.C. § 12182 (ADA Title III)** and **24 C.F.R. § 8.33 (Section 504),** which **require housing providers to make reasonable accommodations.**

    g. **HUD has explicitly stated** that **tenants with disabilities cannot be evicted without engaging in the interactive process to assess accommodations.**

## II. LEGAL STANDARD

A party seeking a **Temporary Restraining Order (TRO) or Preliminary Injunction** must establish:

1. A **likelihood of success on the merits**;

    a. **Elrod v. Burns, 427 U.S. 347, 373 (1976)** – Establishes that **loss of First Amendment freedoms** constitutes **irreparable harm**, reinforcing your **retaliation claim under FHA & ADA**.

    b. **Doe v. Univ. of Cincinnati, 872 F.3d 393, 407 (6th Cir. 2017)** – Confirms that **"the denial of procedural due process itself constitutes irreparable harm."** Useful if HUD or ECHO's failure to engage in the ADA/VAWA process violates procedural rights.

    c. **Lavin v. Husted, 689 F.3d 543, 547 (6th Cir. 2012)** – Courts recognize **constitutional violations as irreparable harm**, reinforcing your FHA retaliation claim.

2. That they will suffer **irreparable harm** without relief;

3. That the balance of **equities favors** the moving party; and

4. That an injunction is in the **public interest**.

    a. **Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)**.

## III. LEGAL CLAIMS & LIKELIHOOD OF SUCCESS ON THE MERITS

13. **COUNT I - VIOLATION OF THE FAIR HOUSING ACT (42 U.S.C. § 3617) – RETALIATION**

    a. **Defendants HUD, ECHO, and Nick Jackson retaliated against Plaintiff** for asserting her **Fair Housing rights**, violating **42 U.S.C. § 3617**.

    b. The **FHA prohibits retaliation against tenants** who engage in **protected housing activities**, including filing **HUD complaints**.

14. **COUNT II - VIOLATION OF THE VIOLENCE AGAINST WOMEN ACT (24 C.F.R. § 5.2005)**

    a. Defendants **HUD, ECHO, and Nick Jackson failed to process Plaintiff's HUD Form 5382 and ignored her VAWA protections**, violating **24 C.F.R. § 5.2005**.

    b. **VAWA prohibits evictions of tenants who face housing instability due to domestic violence.**

15. **COUNT III - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12182)**

    a. **Defendants HUD, ECHO, and Nick Jackson failed to engage in the interactive process** and ignored **Plaintiff's ADA accommodation request** dated **February 8, 2025**.

    b. **U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 396 (2002)** – The **burden is on the defendant** to show why granting an accommodation is **not reasonable**.

    c. **PGA Tour, Inc. v. Martin, 532 U.S. 661 (2001)** – **Denial of accommodations is a violation of Title III of the ADA unless there is a fundamental alteration of the program.**

    d. **Giebeler v. M&B Associates, 343 F.3d 1143 (9th Cir. 2003)** – The **FHA and ADA require an interactive process for accommodations**, meaning ECHO's silence is already a violation.

16. Plaintiff's landlord, **Nick Jackson, further violated the ADA by failing to halt eviction proceedings despite receiving an ADA accommodation request on February 17, 2025**.

## IV. IRREPARABLE HARM

17. **Plaintiff faces imminent eviction**, which would result in:

    a. **Loss of stable housing**, exacerbating her **disability** and placing her at risk of **homelessness**.

    b. **Violations of her federal rights**, including **ADA, VAWA, and FHA protections**.

    c. **Emotional and psychological distress** due to unlawful eviction actions.

18. **Housing discrimination and retaliation constitute irreparable harm** under federal law.

    a. **Gresham v. Peterson, 225 F.3d 899, 905 (7th Cir. 2000)** (finding **irreparable harm exists when eviction results in loss of essential housing**).

## V. BALANCE OF EQUITIES & PUBLIC INTEREST

19. **The balance of equities favors Plaintiff** because:

    a. **Defendants will suffer no harm from following federal law.**

    b. **Plaintiff will suffer irreparable harm if evicted in violation of her rights.**

20. **Public interest favors enforcement of ADA, FHA, and VAWA protections.**

## VI. REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. **Issue a Temporary Restraining Order (TRO)** halting eviction proceedings until HUD completes its investigation.

2. **Issue a Preliminary Injunction** preventing Defendants from engaging in further **retaliatory conduct**.

3. **Compel HUD and ECHO to comply with federal protections** under FHA, ADA, and VAWA.

4. **Award Plaintiff attorneys' fees and costs**, and grant **any other relief** this Court deems just and proper.

**Dated:** March 6, 2025

**Respectfully submitted,**

**Margaux Moughler**
515 31st Ave N., Unit B
Myrtle Beach, SC 29577
moughler.margaux@gmail.com
843-503-7961